[No. 8621.]

## Rapson Coal Mining Company v. Micheli.

1. MASTER AND SERVANT—*When Servant Is Within Scope of His Employment*, is generally for the jury.

While a coal miner was at his dinner, shots previously put in at the place of his work had been fired, and upon his return, finding the place filled with smoke, he retired to an adjacent cross-cut to wait until the smoke cleared away. *Held*, he was still acting within the scope of his duties.

So, of a miner who passes from the place of his work to obtain a drink of water, to inform another miner that a can of powder has been placed in such cross-cut, and engages in testing a piece of fuse, where fuse provided by the master has previously been found defective, resulting in missed shots.

2. ——*Servant's Contributory Negligence*. A coal miner is not negligent in failing to anticipate that a fellow miner of experience will throw a piece of burning fuse into or toward an open can of powder.

3. ——*Burden of Proof*, of servant's contributory negligence is not cast upon the miner by the Act of 1901, c. 67, Rev. Stat., sec. 2065. National Co-Maccia, 25 Colo. App. 441, followed.

4. EVIDENCE—*Judicial Notice*, taken, that the smoke of a fired shot in a coal mine is discomforting and even dangerous.

*Error to Las Animas District Court.* Hon. WATSON McHENDRIE, Judge.

Messrs. ROGERS, ELLIS & JOHNSON, for plaintiff in error.

Messrs. HENDRICK, RALSTON & HENDRICK, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

The plaintiff below recovered judgment in the sum of twelve hundred dollars as damages for injuries sustained while employed as a miner in the coal mine operated by the defendant below, plaintiff in error here.

It appears that the plaintiff Micheli and one Collard were coal miners in the employ of the defendant, in the same common employment, and in the same part of the

mine. They were engaged in driving parallel entries, together with cross-cuts connecting such entries. Two of such cross-cuts had been completed. Micheli was driving a third, a few feet distant from his entry, and his work seems to have been in this uncompleted cross-cut at the time of the accident.

The cross-cut nearest the slope, was closed by a curtain, for the purpose of forcing the air into the cross-cut near where the men were working, which was used for the circulation of air through and between the entries. In this cross-cut the two workmen kept their drinking water, and at least a part of their tools, including some fuse. It appears that there was in this cross-cut at the time of the accident, one full can of powder, and another with some powder in it.

Both plaintiff and Collard knew of the presence of the full can of powder, though plaintiff did not know its location, and plaintiff says he did not know of the presence of the partially filled can. Also, that he had borrowed powder from Collard in the forenoon of the day of the accident, and before the full can was placed in the cross-cut.

The two men were the only persons working in that part of the mine, and the only inference as to the presence of the partially filled can in the cross-cut is that Collard placed it there for some purpose. The two men had returned from their dinner. Collard passed down his entry, and the plaintiff down his to his working place which he found filled with smoke. He remained at this place for a short time and then went to the cross-cut, where he sat down to wait for the circulating air to clear his working place of the smoke. While in this position Collard came from his entry into the cross-cut and walked to the drinking water. He then advised plaintiff that a can of powder had been placed in the cross-cut.

Collard took a drink of water, picked up a piece of fuse, remarking that the fuse was no good, and that he was going to test it, and proceeded to do so. He was at this time about ten feet from plaintiff. He cut the covering on the fuse in three places, touched his lamp to two of these places, neither of which burned, then to the third place which ignited, whereupon he threw the fuse away, and which apparently fell on or near the powder, and the explosion occurred as a result.

The only testimony in the case concerning all of these matters is by the plaintiff. Collard was killed by the explosion, and no other person was near or had knowledge of the circumstances.

The errors assigned are: (1) that plaintiff and Collard were not acting within the scope of their authority, (2) that plaintiff was guilty of contributory negligence, and, (3) that instruction number five given by the court constituted prejudicial error.

It is difficult to understand the contention of plaintiff in error that neither the plaintiff or Collard was acting within the scope of his authority. Both the plaintiff and Collard were at the time employes of the defendant and engaged in the work for which they were employed in the mine.

It seems to be urged that because the workmen had passed temporarily from their working places into the cross-cut, such action took them without the scope of their employment. But the testimony shows that while plaintiff and Collard were at dinner, the shot firer had fired the shots where plaintiff was working, and upon his return, finding the place filled with powder smoke as a result of these shots, he went into the cross-cut, to await the clearing of the smoke before resuming his work.

This, if true, and there is no testimony to the contrary, was a very reasonable and perhaps necessary

thing to do, and clearly did not take him without the scope of his employment. Common knowledge and experience is that powder smoke under such circumstances is very discomforting and even dangerous. It was therefore a natural and reasonable act for plaintiff to leave this place and pass into the cross-cut which was very near, and through which fresh air was circulating, until such time as his working place was cleared of the smoke sufficiently to enable him to resume his work.

Collard had passed from his working place apparently to take a drink of water, to advise plaintiff as to the fact of the can of powder having been brought to the cross-cut, and to test the fuse. This would seem to be neither unusual nor unnecessary in such employment.

The men were engaged exclusively in the employment of the defendant, their action was such as might reasonably have been expected of the master in the same circumstances, and, therefore, the presumption of law is that such acts were within the apparent scope of the servants' authority, and the defendant in such case is charged with the burden of proving want of authority. Wood on Master and Servant, § 559.

Whether or not a servant is acting within the scope of his authority is generally one of fact for the jury under proper instructions, and not a question of law for the court.—*Ward v. Teller Reservoir Co.*, 60 Colo. 47, 153 Pac. 219.

It is urged that it was not within the scope of the authority of either of the servants to test the fuse but there is no proof to sustain such contention. It does not appear that it was not the duty of the miner to load the holes and attach the fuse, or that the shot firer had any other duty than to light the fuse after the loading. Indeed, the testimony justifies the conclusion that it was the sole duty of the miner to load the holes and attach

the fuse. The testimony of the plaintiff is that both he and Collard had been experiencing difficulty with defective fuse. Inasmuch as a defective fuse must result in a missed shot, it is clearly in the interest of the employer as well as the employe, that defective fuse should be avoided where reasonably possible, to save time and to avoid danger.

It is urged that the plaintiff was guilty of contributory negligence in that he did not remonstrate with Collard, or leave the cross-cut when Collard began to test the fuse.

It is not reasonable to infer that the plaintiff could anticipate that his fellow workman, and an experienced miner would throw a lighted fuse in the direction of or into a powder can, and after he did so, it was too late to take refuge. There is no testimony in the case to indicate that the circumstance of testing the fuse, was unusual or dangerous in the exercise of reasonable prudence upon the part of the person making the test. It is plain that the explosion was the result of the unexpected and negligent act of Collard in casting the fuse in the direction of the powder. This is not contributory negligence. *Miller v. Camp Bird,* 46 Colo. 569, 105 Pac. 1105.

Instruction No. 5, complained of, is as follows:

"You are further instructed that the question of contributory negligence of the plaintiff is a matter of defense and the burden of proof is on the defendant to establish by a preponderance of the evidence. If upon this question of contributory negligence you should find that the evidence is equally balanced, then upon such question it would be your duty to find in favor of the plaintiff."

It is agreed that this was a correct statement of the law prior to the Act of 1901, but it is contended that the enactment of the fellow servant statute changed the rule

in this respect. It has been held in this jurisdiction that such contention is not well founded. In *National Fuel Co. v. Maccia,* 25 Colo. App. 441, 139 Pac. 221, it was said:

"The trial court instructed the jury that the burden of proving contributory negligence was placed upon the defendant company. Counsel for defendant predicates error on this instruction, and upon the theory that since one of the counts in the complaint was based upon the fellow servant statute, and since said statute gives a remedy denied by the common law, that he who would invoke the aid of the statute must plead and prove that he, the plaintiff (or, in this case, the deceased plaintiff's husband), was in the exercise of due care. In other words, that while this instruction of the court was correct as applied to the first count, it was wrong as to the second count, which was based upon the statute, and the court made no limitation as to the application of the instruction. There appears to be authority supporting counsel's contention, but the same is contrary to the rule laid down in *Lorimer v. Ry. Co.,* 48 Minn. 391, 51 N. W. 125; *Dugan v. Chicago Ry. Co.,* 85 Wis. 609, 55 N. W. 894, and *Andrews v. Chicago Ry. Co.,* 96 Wis. 348, 71 N. W. 372. Under statutes similar to our own, the Minnesota and Wisconsin courts have held that it was not within the purpose of the fellow servant act to change the rule as to the burden of proving contributory negligence, and these courts maintain that the phrase, 'without contributory negligence on his part,' appearing in their acts, which is similar to the phrase, 'being in the exercise of due care,' appearing in our act, was obviously inserted in the statute from motives of caution, that it might not be supposed that the declared liability of the master was intended to be absolute, and without regard to any negligence of the complainant contribut-

ing to the injury.  The Wisconsin and Minnesota rule meets with our approval.''

We think the construction thus placed upon the statute is both logical and sound.

It is admitted by the plaintiff in error that the amount of damages awarded is not excessive and that the sole question here is as to the liability of the company.

The judgment is affirmed.

On rehearing; motion for rehearing denied *en banc.*

WHITE, C. J., BAILEY, J., and GARRIGUES, J., dissent.

Decided November 6, A. D. 1916.  Rehearing denied April 2, A. D. 1917.