## LILLIE v. THOMPSON, TRUSTEE.

No. 206.   Decided November 24, 1947.

*Grover N. McCormick* and *N. Murry Edwards* for petitioner.

PER CURIAM.

Petitioner sued for damages under the Federal Employers' Liability Act.[1]   The essence of her claim was that she was injured as a result of the respondent's negligence in sending her to work in a place he knew to be unsafe without taking reasonable measures to protect her.

The district court dismissed the complaint for failure to state a cause of action and entered summary judgment for the respondent.   The Circuit Court of Appeals affirmed without opinion.   162 F. 2d 716.

There is thus a single issue in the case: Could it be found from the facts alleged in the complaint, as supplemented by any uncontroverted allegations by the respondent, that petitioner's injuries resulted at least in part from respondent's negligence?[2]

Petitioner's allegations may be summarized as follows: Respondent required her, a 22-year-old telegraph operator, to work alone between 11:30 p. m. and 7:30 a. m. in a one-room frame building situated in an isolated part of respondent's railroad yards in Memphis.   Though respondent had reason to know the yards were frequented by dangerous characters, he failed to exercise reasonable care

---

[1] 45 U. S. C. § 51.

[2] "Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ."  *Ibid.*

It is not questioned that respondent was engaged in interstate commerce and that petitioner was injured while employed in such commerce.

to light the building and its surroundings or to guard or patrol it in any way. Petitioner's duties were to receive and deliver messages to men operating trains in the yard. In order for the trainmen to get the messages it was necessary for them to come to the building at irregular intervals throughout the night, and it was petitioner's duty to admit them when they knocked. Because there were no windows in the building's single door or on the side of the building in which the door was located, petitioner could identify persons seeking entrance only by unlocking and opening the door. About 1:30 a. m. on the night of her injury petitioner responded to a knock, thinking that some of respondent's trainmen were seeking admission. She opened the door, and before she could close it a man entered and beat her with a large piece of iron, seriously and permanently injuring her.

In support of his motion for summary judgment respondent alleged, and petitioner did not deny, that the assailant was not an employee of the respondent and that the attack was criminal.

The district court stated, in explanation of its action, that there would be no causal connection between the injury and respondent's failure to light or guard the premises, and that the law does not permit recovery "for the intentional or criminal acts" of either a fellow-employee or an outsider.[3]

We are of the opinion that the allegations in the complaint, if supported by evidence, will warrant submission to a jury. Petitioner alleged in effect that respondent was aware of conditions which created a likelihood that a young woman performing the duties required of peti-

---

[3] The court cited *Davis* v. *Green*, 260 U. S. 349 (1922); *St. Louis-San Francisco R. Co.* v. *Mills*, 271 U. S. 344 (1926); *Atlantic Coast Line R. Co.* v. *Southwell*, 275 U. S. 64 (1927); and *Atlanta & Charlotte Air Line R. Co.* v. *Green*, 279 U. S. 821 (1929), reversing *per curiam* 151 S. C. 1, 148 S. E. 633.

tioner would suffer just such an injury as was in fact inflicted upon her. That the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it.[4] Breach of that duty would be negligence, and we cannot say as a matter of law that petitioner's injury did not result at least in part from such negligence. The cases cited by the district court,[5] we believe, do not support the broad proposition enunciated by it, and do not cover the fact situation set forth by the pleadings in this case.

Certiorari is granted, and the judgment is reversed and the case remanded to the district court.

*Reversed.*

---

[4] See Restatement of Torts, § 302, Comment *n:*

"*n.* The actor's conduct may create a situation which affords an opportunity or temptation to third persons to commit more serious forms of misconducts which may be of any of several kinds. (1) The third person may intend to bring about the very harm which the other sustains. . . . The actor is required to anticipate and provide against all of these misconducts under the following conditions in all of which it is immaterial to the actor's civil liability that the third person's misconduct is or is not criminal . . . :

. . . . .

"8. where he knows of peculiar conditions which create a strong likelihood of intentional or reckless misconduct (see Illustrations 21 and 22).

"*Illustrations:*

. . . . .

"21. The employees of the X and Y Railroad Company are on a strike. They or their sympathizers have torn up tracks, misplaced switches and otherwise attempted to wreck trains. A train of the X and Y Company is wrecked by an unguarded switch so misplaced. A, a passenger, and B, a traveler upon a highway adjacent to the track sustain harm. The X and Y Company is liable to A and B because it did not guard the switch."

[5] See note 3, *supra.*